IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES DANIEL CONLEY, | ) | |
|     Plaintiff, | ) | Case No. 7:23-cv-00367 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| VIRGINIA DEPARTMENT OF | ) | Chief United States District Judge |
| CORRECTIONS, et al., | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION

James Daniel Conley, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against the Virginia Department of Corrections (VDOC) and members of the medical staff at Wallens Ridge State Prison. The case is presently before the court for review under 28 U.S.C. § 1915A(a). Because it is clear from the complaint that Conley failed to exhaust his administrative remedies prior to filing suit, the court will dismiss the complaint without prejudice.

### I.      Background

Conley alleges that he began suffering from penile bleeding and pain on May 5, 2023, while incarcerated at Wallens Ridge State Prison. Compl., ECF No. 1, at 3. During pill pass the following morning, Conley informed a nurse that his penis was bleeding and that he was experiencing intense pain. Id. at 4. He was examined in the medical department approximately eight hours later. Id. The nurse responsible for examining him called the prison doctor, who prescribed an antibiotic and directed Conley to inform medical staff immediately of any testicular swelling. Id. at 6.

On May 7, 2023, Conley informed a nurse that his right testicle was beginning to swell and that he was still experiencing bleeding and pain Id. at 6–7. Conley alleges that "nothing was done" by the nurse or the doctor who examined him the following day. Id. at 7. On May 9, 2023, a different doctor ordered diagnostic testing and advised him that he "needed to see a urologist ASAP." Id. at 8. On May 30, 2023, Conley was transported to Clinch Valley Medical Center to see a urologist. Id. at 9. Upon arriving at the medical center, Conley learned that the appointment had been cancelled the previous day. Id. As of June 14, 2023, the date on which he signed the complaint, Conley had not been seen by a urologist. Id. at 2, 10.

In response to a question on the complaint form, Conley indicates that he filed a grievance regarding the facts of the complaint. Id. at 1. He alleges that he first filed a written complaint on May 9, 2023, and that he did not agree with the response. Id. He alleges that he "appealed it to the Warden" on May 22, 2023, and that he appealed the Warden's response to the Health Services Director on June 9, 2023. Id. Conley states that he is "waiting for [an] answer" from the Health Services Director on his final appeal, that he should receive a response "within 30 days," and that he is "filing suit regardless." Id.

## II.    Discussion

The Prison Litigation Reform Act of 1995 (PLRA) "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 578 U.S. 632, 635 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). The exhaustion requirement "serves two main purposes." Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it "protects

administrative authority" by giving "an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and by discouraging "disregard of the agency's procedures." Id. (internal quotation marks, brackets, and citation omitted). Second, it "promotes efficiency" since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id. "And even where a controversy survives administrative review, exhaustion of administrative remedies may produce a useful record for subsequent judicial consideration." Id. (internal quotation marks and citation omitted).

Over the past twenty years, the Supreme Court has "strictly interpreted" the PLRA's exhaustion provision. Williams v. Carvajal, 63 F.4th 279, 285 (4th Cir. 2023). The Court has held that the provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court has also held that "proper exhaustion" of administrative remedies is required, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (internal quotation marks and citation omitted). Thus, if an inmate does not comply with applicable deadlines and other critical procedural rules, the exhaustion requirement is not satisfied. Id. at 90–91. Additionally, district courts "may not excuse a failure to exhaust, even to take [special] circumstances into account." Ross, 578 U.S. at 639.

3

VDOC Operating Procedure ("OP") 866.1, titled Offender Grievance Procedure, is the mechanism used to resolve inmate complaints within the VDOC, and the court is permitted to take judicial notice of that procedure. See OP 866.1, eff. Jan 1, 2021, available at https://vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-866-1.pdf (last visited Aug. 28, 2023); see also Martin v. Duffy, 858 F.3d 239, 253 n.4 (4th Cir. 2017) (noting that a correctional procedure is a public record for which a court may properly take judicial notice under Federal Rule of Evidence 201(d)). The VDOC grievance process involves three basic steps.

First, before submitting a grievance, an inmate must make a good faith effort to resolve an issue informally through the procedures available at the institution. See OP 866.1(I)(D). Generally, this may be accomplished by submitting a written complaint to the grievance department, which is then forwarded to the appropriate staff for investigation and a response. Id. If an inmate does not receive a timely response to a written complaint, or if the inmate is dissatisfied with the response, the inmate may submit a regular grievance. Id. The Warden or other Facility Unit Head is responsible for providing a Level I response to a grievance within thirty days. OP 866.1(III)(F). If the inmate does not agree with the grievance response, he may submit a Level II appeal within five days of receiving the response. OP 866.1(IV)(B). Grievance appeals regarding health services are reviewed and responded to by the Health Services Director. OP 866.1(IV)(C). The Health Services Director must complete the appeal and provide a response within twenty days of receiving the appeal. Id.

An inmate must complete all of the requirements of the Offender Grievance Procedure before he can seek judicial relief. OP 866.1(V)(A). The exhaustion requirement is satisfied

when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." OP 866.1(V)(B). At the final level of appeal, "the appeal respondent must notify the offender that all requirements have been exhausted." OP 866.1(V)(C). Alternatively, if a Level II response is not returned to an inmate within twenty days and an authorized continuance is not issued, "the inmate may then seek judicial relief." OP 866.1(IV)(C).

Inmates are "not required to specially plead or demonstrate exhaustion [of administrative remedies] in their complaints." Jones, 549 U.S. at 216. Instead, "failure to exhaust is an affirmative defense" that ordinarily must be raised by defendants. Id. "Exceptions to this rule, which allow a court to sua sponte dismiss a complaint for failure to exhaust administrative remedies, are rare." Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017). One such exception is "when the facts alleged in the complaint, taken as true, prove that an inmate failed to exhaust his administrative remedies." Id.

Here, the complaint itself makes clear that Conley had not yet exhausted his administrative remedies at the time he filed this action.* Conley expressly acknowledged that his appeal to the Health Services Director was still pending and that the time for a response had not yet expired. Because it is apparent from the face of the complaint that Conley failed to exhaust his administrative remedies prior to filing suit, the court will dismiss the complaint without prejudice.

---

\* Under the prison mailbox rule, a pro se prisoner's pleading is deemed to have been filed on the date that the prisoner submits the pleading to prison authorities for mailing. Houston v. Lack, 487 U.S. 266, 276 (1988). Here, the complaint was signed on June 14, 2023, and it was postmarked June 20, 2023, eleven days after Conley appealed the Warden's Level I response to the Health Services Director.

### III.    Conclusion

For the foregoing reasons, Conley's complaint will be dismissed without prejudice for failure to exhaust his administrative remedies. If Conley is dissatisfied with the Health Services Director's response to his grievance appeal, or if more than twenty days have passed without a final decision or continuance being issued, he may file a new civil action. An appropriate order will be entered.

Entered: September 7, 2023

Digitally signed by Michael F.
Urbanski       Chief U.S.
District Judge
Date: 2023.09.07 10:22:13
-04'00'

Michael F. Urbanski
Chief United States District Judge